RICHARD YETMAN

*v.*

JACKSON HEDGEMAN et al.

[Argued July 21st, 1913. Decided August 7th, 1913.]

1. Where a husband pays the purchase price of land which he procures to be conveyed to his wife, it will be presumed that he intended a gift to or settlement on her, and not a resulting trust, to rebut which presumption proof of circumstances, certain, definite, reliable and convincing, must be introduced, leaving no reasonable doubt as to the intention of the parties.

2. In a suit by a husband to enforce a resulting trust of land purchased by him and conveyed to his wife, evidence that after such conveyance she acknowledged by words and acts that she held the land in trust, and that it was not the intention of the parties that the deed should operate as a gift to her, was admissible.

3. Where land, purchased and paid for by a husband, was conveyed to his wife, evidence *held* to require a finding that a resulting trust for the husband's benefit was intended, and not a gift to the wife.

4. Since a resulting trust must arise at the instant the deed is taken and the legal title vested in the grantee, and, in order to determine the existence of such a trust, the situation when the title passed is the controlling factor, a subsequent payment of purchase-money will not by relation attach a resulting trust to the original purchase.

5. Where a husband purchased real property, paying a portion of the consideration, contracting to pay the balance, and assuming mortgages thereon, and had the title conveyed to the wife, but not intending a gift to or settlement on her, he being bound to make the subsequent payments of the purchase price, such payments made after the legal title vested in the wife took effect by relation as of the time the title passed, and were available to establish a resulting trust.

On bill, answer, replication and proofs.

*Mr. William A. Coddington,* for the complainant.

*Mr. Alfred B. Cosey,* for the defendants.

BACKES, V. C.

The bill of complaint alleges: That the complainant purchased a house, No. 616 East Third street, and the lot adjoining, in Plainfield, New Jersey, the title whereof was taken in the name of his wife, Sarah H. Letman; that the wife is now deceased, without having had children by the complainant, leaving a brother and sisters, and children of deceased sisters, the defendants in this cause, who claim the property by inheritance; that Sarah was the complainant's second wife; that he had children by a former wife; that the complainant and Sarah discussed the matter of the purchase of the property, and wanted it so held that it could be held and enjoyed by them and the survivor of them during their joint and several lives; that the complainant and his wife were ignorant of the law in such matters and they conceived and understood the law to be, that if the deed for the said premises should be made to the wife, that the enjoyment of the said premises would then be secured to her during her life, and if she should predecease the complainant, that then he would take the absolute title by inheritance from his said wife; that acting under such misapprehension of the law, they took the title in the name of the wife; that the consideration of $1,600 was paid by the complainant. The original prayer was that the lands and premises might be decreed to be the absolute property in fee-simple of the complainant. As amended it prays that the deed be reformed so that it should read

"unto the said Sarah H. Yetman for life and then unto the said Richard Yetman, his heirs and assigns, to the only proper benefit and behoof of the said Richard Yetman, his heirs and assigns forever, * * * and that the said lands and premises be determined to be the absolute property of the said Richard Yetman in fee."

There is also a prayer for general relief. The bill in reality is one to establish a resulting trust of the fee in remainder, and the cause was tried upon that theory. If necessary the prayer may be further amended. The prayer as it stands, instead of asking generally that a trust be declared, prays one of the courses by which relief, as of a resulting trust, may be effected,

and in conjunction with the prayer for general relief, it may be sufficient. The allegation of the bill that the title was taken in the name of the wife, because of a mutual mistake of the law is not pleaded as a substantive cause for action, but is to be regarded as a statement manifesting the intention of the parties, and an appeal for relief on that score is not now entertained, although under some circumstances it might and ought to be favorably considered.

Assuming, and which I find to be the fact as will hereafter appear, that the complainant paid the purchase price, he is at the outset confronted by the presumption that he paid it and caused the fee to be vested in his wife, as a gift or settlement upon her, and to overcome this presumption the proof must be equally satisfactory and explicit with the proof required to establish a resulting trust, and the circumstances relied upon must be certain, definite, reliable and convincing, leaving no reasonable doubt as to the intention of the parties. *Peer* v. *Peer, 11 N. J. Eq. (3 Stock.) 432; Read* v. *Huff, 40 N. J. Eq. (13 Stew.) 229; McGee* v. *McGee, 81 N. J. Eq. (11 Buch.) 190.*

When lands are purchased by one person, who pays the purchase price, and they are conveyed to another person who is a stranger, a trust in the lands is implied or results in favor of him who has paid the consideration. But where a husband purchases and pays for lands and takes the title in the name of his wife, such a trust does not necessarily result. On the contrary, a presumption arises that the husband has caused the conveyance to be made to his wife by way of a settlement upon her. Such a presumption may be rebutted and overcome by proof of facts accompanying the transaction which show that the intention of the parties was that the lands should not be held by the wife as settled upon her, but in trust for the husband. Her subsequent acknowledgment and recognition by words or acts may be given in evidence. If from all the evidence it is clear that the presumption of settlement is rebutted a trust will then result which can be enforced. *Duvale* v. *Duvale, 56 N. J. Eq. (11 Dick.) 375.*

In the final analysis, the question "whether a purchase in the name of a wife is a settlement or not, is a question of pure

intention, though presumed in the first instance to be a provision and settlement, but any antecedent or contemporaneous acts or facts may be received, either to rebut or support the presumption" (*Persons* v. *Persons, 25 N. J. Eq. (10 C. E. Gr.) 250*) ; as well as declaration against interest by the grantee. *Duvale* v. *Duvale, supra.*

The facts admitted are these: March 21st, 1899, the complainant entered into a contract in writing with one Philip Cottrell to buy, and to pay therefor $1,550, a lot upon which the house stood. Two hundred dollars was paid down, and it was agreed that $15 per month with interest was to be paid until the debt was reduced to $800, at which time a deed was to be delivered and a mortgage taken for the balance. In March, 1900, the complainant bought from the same party a strip of land adjoining for which $50 was paid at the time. The installments with interest were paid with regularity until the debt was reduced to $1,000, when by deed dated June 6th, 1902, Cottrell and wife conveyed both lots to Sarah, the complainant's wife. A mortgage was given for the amount of the unpaid purchase price. Later the debt was reduced to $800, and a new mortgage for that sum was made in 1905. In the early part of 1905 the house and furniture were partially destroyed by fire. From the insurance the sum of $1,725 was realized, a portion of which was used to rebuild the house, and to replace the furniture; the surplus was applied towards the redemption of the mortgage, which was eventually paid in 1909 and canceled of record.

There is some dispute as to whether the complainant paid the purchase price. That the complainant paid the initial sums, amounting to $250, there can be no doubt. As to the payments of the installments, and those in liquidation of the mortgages, it is claimed that Sarah made contributions out of her earnings as a laundress. The complainant as a coachman earned, beside his keep, approximately forty-five dollars per month, which on pay day he handed to his wife. In this the complainant is corroborated by his two children, and by admissions of his wife, testified to by a number of witnesses. With this money she ran the home and paid off the debt on the house. Although Sarah

was at all times in delicate health, she performed her household duties, and occasionally earned a little money by going out at day work and doing some laundry. What she did with it does not appear, but it may be assumed that she used it in common with her husband's earnings in running the household. The complainant left the management of the finances to his wife. Indeed, because she had some education, and he was illiterate, he confided all of his business affairs to her, and as I view the situation and conduct of the couple, it is not to be otherwise considered than that the moneys which Sarah used in making the installment payments on her husband's contract, and the subsequent payments on the mortgage debt were the moneys of the complainant. He paid the purchase price.

Some of the purchase-money was, however, paid by the complainant after the grant to his wife. It is a well-settled principle that a subsequent payment of purchase-money will not by relation attach a resulting trust to the original purchase, for a resulting trust arises from the fact that the money of the real and not the nominal owner formed the consideration of the purchase at the time and became converted into land (*Ostheimer* v. *Single, 73 N. J. Eq. (3 Buch.) 539*), and also that a resulting trust must arise at the instant the deed is taken, and the legal title is vested in the grantee, and the situation of the transaction when the title passed is to be looked to, and not the situation preceding or following that time. *Krauth* v. *Thiele, 45 N. J. Eq. (18 Stew.) 407.* By the contract for the purchase of the house-lot the complainant became personally bound to pay $1,550. The installment payments until the amount was reduced to $1,000 are to be regarded as having been paid by him in pursuance of his legal obligation, notwithstanding Sarah may have mingled her mite with his money. And this holds true with reference to the moneys paid in satisfaction of the mortgages, because the complainant (with Sarah) bound himself by bond to pay the debt secured by the mortgages. So that if these dealings had been between strangers a resulting trust would have arisen, not only to the extent of the purchase-money paid up to the time the legal and equitable title took different

directions (*Krauth* v. *Thiele, supra; Cutler* v. *Tuttle, 19 N. J. Eq. (4 C. E. Gr.) 549*), but also as to the moneys paid afterwards; for payment of the purchase price made after the legal title is vested in pursuance of an antecedent or contemporaneous legal obligation is payment as of the time the title passed. It is not necessary that the consideration should be paid *in specie*, but anything representing it, coming from or in behalf of the *cestui que trust*, will be equally available to protect the beneficial interest. The cases which declare the unavailability of subsequent payments have reference to such as are made pursuant to arrangements concocted after the conveyance had been made and consummated. *Lounsbury* v. *Purdy, 16 Barb. 376; affirmed, 18 N. Y. 515; Gray* v. *Jordan, 87 Me. 140; Gilchrist* v. *Brown, 165 Pa. St. 275; Scawin* v. *Scawin, 1 Younge & C. 65.* Or the subsequent payment of the mortgage may be regarded as an enlargement of the trust estate. *Perry on Trusts* § *133.*

A more troublesome topic involves the intention of the parties and whether the proof overcomes the presumption of a gift or settlement. The complainant testified that he and his wife had frequently talked the matter over, and they concluded that because he had children, and she had none, if the conveyance were to be made to him, the children could, after his death, put her out of doors, and because of this they arranged that the title should be taken in her name, for her protection, upon the understanding that after they were both dead, the property was to pass to his children; that it was to be a home for both as long as they lived, and then it was to go to his children, and that by the deed taken in her name, he thought he was accomplishing this result. The rest of the proof relates to admissions made by Sarah. The daughter of the complainant, Elizabeth Mayse, says that Sarah often told her, and she heard it discussed between her parents,

"that the place belonged to them, was hers and papa's as long as they lived, and if she was the first to go, it would be papa's as long as he lived, and if papa was the first to go, it was to be mama's as long as she lived, and at the end of their lives it belonged to us (his children)."

The son, Edward, says that Sarah told him

"that she had the place in his (father's) name and her name; that she had it in her name for protection * * * she had things fixed so that if she was the first to go the place would be papa's, and if he was the first to go no one could put her out; that after they were both gone, the place would belong to us, sister and I."

To a half a dozen witnesses Sarah expressed herself, upon as many occasions, variously, that

"she had the property in her name for protection, for herself, because the children were not hers and at his (the complainant's) death, if he died first, she would own the property so the children could not go in until after the father's (mother's) death. * * * Me and my husband have got our home and we want to stay here and keep it, there is no one but my husband and myself and we want to enjoy it, * * * she had it in her name not because she didn't want him to enjoy the place, but she wanted it in her name on account of the children, * * * he might go first and then the children could put her out; that if she happened to go first she would leave it so that it would be to him, and then he would leave it to the children. * * * As for the home, pop paid for the home, and it is ours as long as we live, and after we die, if we haven't paid for it, and Lizzie and Ed can't pay for it right, they will lose it, * * * it was hers and her husband's, and if anything ever happened to her and him it would be for the two children; * * * that if she should die that that home that she had there and everything in the house were her own in the house, she paid for the home with his money, and it was his and she wanted him to have it after she died and she had everything fixed. * * * I have it in my name, and after my death, I want it to go to pop, and after that I want the children to have it."

The statements attributed to Sarah as having been made to the complainant, testified to by two of the defendants and a relative, and denied by the complainant and his two children, to the effect that she owned the house "and if he didn't like what she said he and his brats could both get out," if made, were evidently the outbursts of passion probably provoked by some passing domestic discord, and were not meant in the sense which is attempted to be now given them.

The natural bent of people circumstanced as this couple was is not to be overlooked. They were poor, and they labored hard and stinted and strived to get a home, a haven in which to spend their declining years. All that the complainant earned and

could save was devoted to this single purpose, and it is only reasonable to· assume that neither party entertained the idea that by taking the title to the land in his wife's name, the complainant intended to strip himself of all that he had in the world. No such improvidence can be ascribed to either. It cannot be believed that the complainant and his wife intended that after her death these defendants, who .are outsiders, were to enjoy the fruits of his life's work and he go destitute, and, upon the plainest principle of justice, they ought not.

Furthermore, it is obvious that the complainant and Sarah were of the belief that if the title to the land should be taken in the name of the wife, it would enure to the complainant at her death. Though mistaken in their apprehension of the law, this is at least evidential of an intention that a trust should result (*Milner* v. *Freeman, 40 Ark. 62*), and it is more. Although in *Fretz* v. *Roth, 70 N. J. Eq.* (*4 Robb.*) *764, 770,* it was said: "Even if it be admitted that the complainant did not understand the legal effect of the deed he gave, it, nevertheless, must be held, under long-settled principles, that he is remediless," yet, under circumstances such as are here disclosed, where it appears that it was intended that the gift should be of a limited estate, and the method used to accomplish that end was misunderstood, and the legal effect was contrary to the intention of the parties, equity will grant relief. *Garnsey* v. *Mundy, 24 N. J. Eq.* (*9 C. E. Gr.*) *243; Mulock* v. *Mulock, 31 N. J. Eq.* (*4 Stew.*) *594; Duvale* v. *Duvale, supra.*

Upon the whole case the proofs and circumstances satisfactorily and convincingly rebut the presumption of a settlement other than of an estate for life. The entire atmosphere of the cause repels the implication of a gift, absolute, in fee-simple. I will advise a decree declaring that Sarah Yetman held the lands in trust for the complainant, subject to her life estate; that the same descended to the defendants, who now hold them in trust for the complainant, and that they be decreed to convey the same to the complainant. As the trust was cast upon the defendants, and they were justified in defending this suit, no costs will be imposed upon them. *Peer* v. *Peer, supra.*