I cannot feel that it would be of any advantage to reserve by decision in this case. My attention has not been called specifically to any law except the one case cited. The situation is, to some extent, complex, in others quite plain of understanding. It seems from the evidence that some thirty-five years ago Mr. and Mrs. Stadler, Sr., both of whom were Germans with somewhat scant knowledge of English, came to Atlantic City and entered into a business, ice cream and *Page 180 
bakery, or things of that sort; that after being in one location for a few years they moved to what has been called Virginia and Atlantic avenues, where they rented for one year and later purchased a tract of land and built a plant for the conduct of their business near the last location, I think No. 10 South Virginia avenue. This couple were blessed with, I think it is, seven children, five girls and two boys. All of this family united as a unit in the conduct of this business and each continued in the business, each doing some certain part of the work required in the conduct of the business, the oldest son, Ferdinand, either was given or gradually acquired the general management of the business. He was, to that extent, the head of the business. As I have said, each of the children participated in this business alike, with this exception, that when the daughters married, or those of them who did marry, they ceased their activity in the conduct of the business. When the sons married they still continued their activity in the business, but left the home roof and started homes of their own, and, evidently, they were paid salaries or allowances made to them, perhaps differently than they were before. There is no testimony as to whether specific salaries were paid to any or not.
The father makes his will giving to the wife a life interest in all the property, giving to two of the daughters who had previously married the sum of $1,000 each upon the death of the mother, and dividing all the property, after the death of the mother as life tenant, among the other children. Mrs. Ballantine, the present complainant, although having previously married, was not placed in the same list as the other two daughters, who had married and allowed or given the sum of $1,000, but she was placed in the same category as the sons and the remaining daughters who had not married. It is clear that from the time of her marriage, or, perhaps, shortly thereafter, she had, as had her other two sisters who had married, ceased active work in the concerns of the business. After the reading of the will, according to her testimony, at the time of the reading of the will and according to the testimony of at least some of the defendants at a later *Page 181 
period, some discussion arose as to whether the will was just, and it was suggested to her, according to the testimony of the defendant, that if she desired to be in the position to take advantage of owning a certain part of that property or that estate after the death of the life tenant, she must participate in the work of carrying it on. According to her testimony she was told that Ferdinand, and, at least, one of his sisters, would not go ahead with the carrying on of this business, evidently for not only their benefit but for the benefit of the life tenant, if she was to continue to receive, or was to receive, her share of the benefits of that business, and it was suggested or demanded of her that she consent to be placed in the same situation as the other married sisters — that is, to receive a thousand dollars at the time of her mother's death and to waive any right in her father's estate. She signed such an agreement, together with her husband, and likewise signed before a master in chancery, who, according to her story, read the paper to her and she acknowledged the contents of it.
The business after the father's death was continued in exactly the same manner. Of course, technically, legally the life tenant was receiving the benefit of it, it cannot be doubted, however, that this business was carried on during the mother's lifetime as a partnership between Ferdinand, his brother Lewis and the sisters, who were supposed to receive that part. There can be no doubt in the court's mind but what the business was carried on, the mother was supported, and they received, either by way of profit or by way of salaries, the proceeds of this business, and when I say that I am confident that the business was carried on as though it was actually their property, that the proceeds were in enlargement of the plant and in payment of the debts — in other words, it was not considered as an estate in that sense of the word, but it was considered as a partnership, they the active owners, together with the mother, claiming to be the only ones interested in it.
The mother dies, and, upon an effort by Ferdinand Stadler of the payment of the $1,000 to Mrs. Ballantine, he having *Page 182 
either then or later paid, at least, one of the other heirs the $1,000, she refuses and says that she will not abide by the contract or agreement she has made.
I cannot find that there was such duress or fraud or misrepresentation, undue influence or other reason sufficiently proven to set aside an instrument made under seal and duly acknowledged as this particular instrument was. I appreciate fully that it was probably signed in the thought that a great advantage was gained to the mother by signing it, but I cannot see how Mrs. Ballantine could feel the responsibility, as was suggested by several witnesses, of the mother's death in the case of this business going to pieces, because she would not accept an offer of the brother and sister and they giving as an ultimatum that they would withdraw from the business. If the withdrawal from the business would cause the death of the mother, they would be the responsible ones, and not Mrs. Ballantine, if she declined to release a right which was hers.
It is unfortunate that a matter of this sort should be brought into the courts between members of the same family, between members of a family, who, apparently, by their united efforts, have built up from a very small beginning a most successful business, as it must be from the testimony that has been presented, but, for the purposes of my decision, taking all the facts as they have been proven before me, I cannot feel that the complainant has produced sufficient for me to say that the solemn paper signed by her should be set aside and declared void. I am making these statements broad so that it will be unnecessary for me to write a further opinion. I am deciding the case entirely upon the facts as presented, and am not referring to any specific legal propositions, except as I have in a general way. *Page 183