WILLIAM BYRON, RESPONDENT, v. BYRON, HEFFERNAN
& CO., A CORPORATION; JOHN F. HEFFERNAN AND
PAUL E. REINICKE, APPELLANTS.

EDWARD BYRON, RESPONDENT, v. BYRON, HEFFERNAN
& CO.. A CORPORATION; JOHN F. HEFFERNAN AND
PAUL E. REINICKE, APPELLANTS.

SOL PINCUS. RESPONDENT, v. BYRON, HEFFERNAN & CO.,
A CORPORATION; JOHN F. HEFFERNAN AND PAUL
E. REINICKE, APPELLANTS.

Submitted July 10, 1922—Decided November 20, 1922.

1. Non-receipt by the party to be charged of a notice of protest
   of a negotiable instrument does not affect his liability to the
   holder when the notices are forwarded in due course to his
   address.
2. The treasurer of a defendant corporation testified that prior to
   the time he signed the notes in suit he had signed notes for this
   company, not having received specific instructions in each case,
   and that the notes were met and paid. *Held*, from such uncon-
   tradicted testimony. the jury were justified in inferring that the
   company authorized the treasurer to represent it in the giving
   of the notes.
3. Duress is defined by text-writers to be that degree of constraint.
   or danger, either actually inflicted or threatened or impending
   which is sufficient in severity or in apprehension to overcome the
   mind of a person of ordinary firmness. Plaintiffs were excluded
   from the defendant company, and each of them claimed a sum
   of money was due him, and one of them filed a bill to have the
   defendant declared insolvent and a receiver appointed. In this
   situation, the defendant company, through the activity of the
   men directing its affairs, entered into negotiations with the
   plaintiffs for a settlement of their claim, and under the advice of
   counsel effected a settlement in pursuance of which some cash
   was paid and the notes in suit were given, and releases were
   given by the claimants to the company. *Held*, that under this
   state of facts no duress existed, as the agreement to pay money
   in settlement of a suit is valid, regardless of the validity of
   plaintiff's demand.

On appeal from the Supreme Court.

For the appellants, *Wall, Haight, Carey & Hartpence.*

For the respondent, *Mark Townsend, Jr.*

The opinion of the court was delivered by

WALKER, CHANCELLOR.    These were suits in the Supreme Court against the maker and endorsers of three promissory notes, tried at the Hudson Circuit, which resulted in verdicts for plaintiffs, who had judgments thereon and defendants appeal here.    There are thirty-four grounds of appeal filed, while only five points are urged for reversal as follows:  (1) Plaintiffs were not holders in due course;  (2) protest and notice of dishonor were not made and given as required by law;  (3) the notes were not authorized by the maker company;  (4) there was no legal consideration, and (5) they were obtained by duress of economic harm.

First. The plaintiffs were endorsees of the notes sued on, and while it may be that the endorsements were made for the purpose of aiding the payees in shutting out defences not available against *bona fide* holders, this is mere conjecture, as each plaintiff testifies that he purchased the notes for value before maturity.    This evidence is not contradicted, and, consequently, the verdict on that score is unexceptionable.

Second. Each note was protested and there was testimony from which it might reasonably be inferred that there was a proper mailing of protest in due course.    It is true that the endorsers testified that they did not receive the notices but this is not conclusive in their favor—the question is, Were they properly sent?    Non-receipt of the notice of protest by the party to be charged does not affect his liability to the holder when the notices are forwarded in due course to his address. *Second National Bank of Hoboken* v. *Smith,* 91 *N. J. L.* 531; *Battery Park Bank* v. *Ramsey,* 100 *Atl. Rep.* 51.

Third. The notes appear on their face to be the obligation of the corporation, being signed in the corporate name by the president and treasurer.    Counsel for appellants urge that the

notes were not authorized by the maker, citing *Aerial League of America* v. *Aircraft Fireproofing Corp.*, 97 *N. J. L.* 530. That was a case in this court in which it was decided that an employe of the defendant company could not bind it in an attempted agreement to cancel an executed contract between the parties, in which attempt he negotiated for additional space on a pier at Atlantic City, where an exhibition was to be held by the plaintiff, he, the employe of defendant, informing the president of the plaintiff corporation that a new contract would be signed and payment for the additional space made, neither of which was ever done, and the space was not used during the exposition by the defendant corporation. Such a state of facts bears no relation to the case now before this court. The payees of the notes in question had been connected with the management of the defendant corporation, difficulties arose and the men were removed. Thereupon one of them filed a bill in chancery against the defendant corporation alleging its insolvency and praying for the appointment of a receiver. Pending hearing on this application the president and treasurer of the company negotiated with the three men and a settlement was effected in pursuance of which, using the language of appellant's brief, "the notes were made by the corporation, through Heffernan, president, and Reinicke, treasurer, and were endorsed by Heffernan and Reinicke personally." It might be added that a considerable sum in cash was paid to the three men as part of the settlement at the time the notes were made and delivered.

In *Murphy* v. *W. H. & F. W. Cane, Inc.*, 82 *N. J. L.* 557, Chancellor Pitney, speaking for this court (at *p.* 559), said: "But we think the present record contains abundant evidence from which the jury might reasonably find that Mr. William H. Cane, the president of the company, was authorized to represent it generally in the making of such contracts as that upon which the plaintiff relies, and therefore that this contract was within the scope of his agency." And (at *p.* 563): "Normally, an agency arises from some contract or other transaction or transactions that are be-

tween the principal and the agent, and not ordinarily known to outside parties, and a third party is entitled to hold the principal on a contract made by the agent in the name of the principal, even though the party does not at the time of the making of the contract know the particular source of the agent's authority. In cases of the class now before us the third party, when litigation necessitates proof of the agency, may adduce evidence of the customary exercise by the alleged agent of the authority appropriate to such an agent under the circumstances that give rise to the inference of knowledge and acquiescence on the part of the principal—not necessarily to show that the principal is estopped in favor of the third party to deny the agency, but rather to show that such an agency was in fact created."

In the cases at bar Paul E. Reinicke, treasurer of defendant company, one of the defendants (as endorser), testified that prior to the time he signed the three notes in suit, he signed notes for the company, not having received specific instructions in each individual case to sign them for the company, and that the notes were met and paid. He also testified that when they employed counsel they came together voluntarily and talked it over. There was no formal meeting of the directors authorizing the giving of the notes or the employing of counsel for the company. There was no contradiction of this, and from it the jury was justified in inferring that the company authorized the treasurer to represent it in the giving of the promissory notes as one of the terms of the settlement above mentioned. The president, too, signed the notes; whether he signed the others to which the treasurer testified, and which were paid in due course, does not appear. Nor does it appear that he was authorized by any directors' meeting to sign the notes in question. However, this is unimportant, for, while his signature may not have imparted any additional efficacy to the obligations, still it deducted nothing from them.

Fourth. These cases were submitted on briefs, and in the brief of counsel for defendants-appellants the argument on the fourth point is a mere reiteration in terms of the fourth

proposition, namely, "plaintiffs were not holders in due course." This contention, or rather assertion, is answered in what is said above as to the first proposition discussed.

Fifth and last. It is claimed that the notes sued upon were obtained by duress of economic harm, and that they are therefore void. Counsel cites 13 *C. J.* 402, as stating: "The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear which made it impossible for him to exercise his own free will." This is but the part of a section (319) wherein it is stated above that the rule as it now exists is that the question of duress is one of fact in the particular case. And (at *p.* 396, § 310) duress is defined to be that degree of constraint or danger, either actually inflicted or threatened or impending, which is sufficient in severity or in apprehension to overcome the mind of a person of ordinary firmness. Now, in the case at bar, there is no evidence justifying a finding of duress of any sort. At the time the plaintiffs were excluded from the defendant company each claimed a sum to be due him, which was not paid. It is true the defendant company and its officers claimed there was nothing due. One of them, Oscar Byron, filed a bill in Chancery to have defendant company declared insolvent and a receiver appointed, and counsel argues from this that the appointment of a receiver, it was well known to the men directing the affairs of the company would have stripped them of their power to resist the force thus brought to bear upon them, *i. e.*, to induce them to settle. After this bill was filed, the defendant company principally, at least, through the activity of "the men directing the affairs of the company," and who made the notes for the company, employed counsel, and negotiation was had at which the parties, claimants and officers and stockholders (who were also directors of the company), met and negotiated the settlement that was made. Not only was the cash paid and the notes given, but it appears that a release or releases were given by the claimants to the company, and, moreover, shortly before the notes matured, the money for

their payment was deposited in bank for that purpose; but at the last moment, upon the advice of counsel other than he who represented the company's interest at the time of the settlement, payment of the notes was stopped upon the theory of the defence set up in this suit.

It would be strange indeed if *duress* were imposed upon the "men directing the affairs of the company" while they were in the presence and under the protection of counsel of their choice who was advising them with reference to the transaction.

A contract made by one under arrest through lawful process, as a condition of his deliverance from imprisonment, cannot be avoided on the ground of duress, although it be shown that no cause of action actually exists, and an agreement to pay money in compromise of a suit is valid, and that regardless of the validity of the plaintiff's demand. *Clark* v. *Turnbull*, 47 *N. J. L.* 265.

The claims sued on in these cases appear to have been valid, and the jury so found. As we view it there was no testimony before the jury which would have justified them in finding to the contrary on the accusation of *duress*. In this view of the situation it becomes entirely unnecessary to further pursue the latter subject.

The judgments under review will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 15.

*For reversal*—None.