CARMELA CAPOSSA, otherwise known as Carmela Collona, petitioner,

*v.*

NICOLA COLONNA, defendant.

1. The validity of a marriage is determined by the *lex loci contractus;* but it it dissolved or annulled by *lex domicilii.*

2. A marriage may not be annulled by virtue of the statute of a foreign state, but only under the statute of this state.

3. A threat by a man that if a certain woman did not marry him the next day he would kill her brother, is not, in the circumstances of the case, such duress as entitles her to have the marriage annulled for that cause.

---

On petition for nullity of marriage. On final hearing on master's report and depositions *ex parte.*

*Mr. Richard Stockton,* for the petitioner.

WALKER, CHANCELLOR.

The petition is one for nullity of marriage. It alleges that the petitioner and defendant were married in the city, county and State of New York, on August 2d, 1922, and that at the time the petitioner was of the age of seventeen years, two months and twenty-two days, having been born in Newark on May 11th, 1905; that at the time of the marriage petitioner was under the age of legal consent, which in the State of New York is eighteen years; that at the time petitioner had not attained the age under which the consent of parents or guardians is required by the laws of New York, which is eighteen years; that neither of the parents of petitioner, who are living, gave their consent to the marriage; that the consent of petitioner was obtained by force, duress and fraud executed and perpetuated upon her by the defendant; that the marriage has never been consummated, and that petitioner has not in anywise confirmed the marriage, and has never cohabited with defendant or had any sexual relations with him; that petitioner and defendant were *bona fide* residents of New Jersey at the time of the commencement of this action. The petitioner pleaded a statute of New York, which provides *inter alia* that a marriage is void from the time its nullity is declared by a court of competent jurisdiction if either of the parties thereto (1) is under the age of legal consent, which is eighteen years, or (2) consents to such marriage by reason of force, duress or fraud. The prayer is that the marriage may be declared by the decree of this court to be null and void for the cause aforesaid pursuant to the statute in such case made and provided. Our statute provides that decrees of nullity of marriage may be rendered in all cases (V) at the suit of the wife when she was under the age of sixteen years at the time of the marriage, unless such marriage be confirmed by her after arriving at such age. *P. L. 1907 p. 475.*

The defendant did not answer, but defaulted in pleading, and the cause was referred to a special master, who reported in favor of nullity because the statute of New York, which was proved as well as pleaded, provides that a marriage may

be annulled because the petitioner was under the age of eighteen years at the time, had not the consent of her parents, and because the marriage was never consummated. He is silent of the question of duress.

The facts of marriage, age of petitioner and residence, and non-consent of parents, were proved and are sufficiently corroborated. There seems to be no proper corroboration of the fact that petitioner is still a virgin. An inspection probably would disclose the truth on this subject. See *Bolmer* v. *Edsall, 90 N. J. Eq. 299* (at *p. 304*) ; also, *Bissell* v. *Bissell, 93 N. J. Eq. 537.* This would seem to be required to satisfy the rule of the best evidence. See *Lasker* v. *Lasker, 91 N. J. Eq. 352.* Only the girl herself testifies in this case that she has not had sexual intercourse. However, it may be assumed for the purpose of decision that the marriage has never been consummated.

The validity of a marriage is determined by the *lex loci contractus,* and it is dissolvable by the *lex domicilii. Bolmer* v. *Edsall, 90 N. J. Eq. 299, 306.* And the nullity of a voidable marriage is also governed by the *lex domicilii. Jimenez* v. *Jimenez, 93 N. J. Eq. 257.*

No statute, whether relating to marriage or anything else, if in the ordinary, general form of words, will be given any effect outside of the local jurisdiction of the government enacting it. To bind even citizens abroad it must either specifically in terms, or by necessary interpretation, include them. *1 Bish. M., D. & S. § 866.*

In *Jimenez* v. *Jimenez, supra,* I said (at *p. 259*) : "We do not grant divorces or nullity of marriage under the statutes of New York, but those of our own state only. The petitioner has evidently mistaken the provision of our Divorce act that divorce (not nullity) may be granted where the cause of action alleged was recognized in the jurisdiction in which the party resided at the time the cause arose, as ground for similar relief asked for in an action in this state. *P. L. 1907 p. 474, § 6 (b).* Therefore, if nullity is to be decreed, it must because our statute, not that of New York, provides the remedy, and it does not." The marriage itself is

valid, even in New York, where it is only voidable under its statute. It is valid here and our statute does not authorize its annulment. The statute of New York differs from our law in two particulars—(1) as to age and (2) as to time when annulment takes effect. In that state the act provides that a marriage is void from the time when it is so declared. In our state the effect of a decree of nullity is to render the marriage void from the beginning. *Steerman* v. *Snow, 94 N. J. Eq. 9.* This difference is an added reason why the statute of New York cannot be enforced here. Surely, we cannot permit the New York legislature to alter our law. This view leads to a denial of nullity by the application of the statute of New York to the case in this state.

Now, as to to the charge of duress: The petitioner's uncorroborated testimony on this subject is as follows: "*Q.* How did you happen to marry Nicola Colonna? *A.* He threatened me at the factory one day, he said if I did not go to New York and marry him he would kill my brother. I was scared and went in the morning to New York; was married in the morning."

Duress is defined to be that degree of constraint or danger either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind of a person or ordinary firmness. *13 Corp. Jur. 296, § 110.* This definition was approvingly cited by the court of errors and appeals in *Byron* v. *Byron, Heffernan & Co., 119 Atl. Rep. 12.* And the agreement must have been entered into because of the fear of the threatened injury, otherwise there is no duress, which will not ordinarily invalidate a contract entered into after opportunity for deliberate action. *13 Corp. Jur., supra.* Surely, this young woman had time for reflection. She had time over night, and instead of going to New York in the morning to marry the defendant she should have informed her brother so that he might have had the defendant arrested and bound over to keep the peace. Besides, duress is a question of fact; and I find as a fact that there was no duress. Assuming that sufficient corroboration of petitioner's story about the threat to kill her

brother may be spelled out of the circumstances of the case because the testimony of another witness is not obtainable (*Meek* v. *Meek, 92 N. J. Eq. 23*), still the threat of itself, all things considered, does not constitute duress of the petitioner.

On the whole case I am clearly of opinion that the relief prayed for should be denied and the petition dismissed.