EMILY FREDA BALLANTINE et al., complainants-appellants,

*v.*

FERDINAND L. STADLER et al., defendants-respondents.

[Argued October 21st, 1925.  Decided February 1st, 1926.]

1. To invalidate a contract on the ground of duress, it must appear that it was entered into because of fear of the threatened injury, otherwise there is no duress, which will ordinarily invalidate a contract entered into after opportunity for deliberate action.

2. Suitors who seek to repudiate their deeds of release are bound to use reasonable diligence, after the delivery of the instruments of settlement, both to ascertain their rights and to enforce them in courts of equity.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Ingersoll, and reported in *99 N. J. Eq. 179.*

*Mr. Lee F. Washington,* for the appellants.

*Messrs. Cole & Cole,* for the respondents.

The opinion of the court was delivered by

HETFIELD, J.

This is an appeal from a final decree of the court of chancery dismissing the bill of complaint, which was filed to set aside a certain agreement, whereby the complainants assigned and released to the defendants, Ferdinand L. Stadler, Louis C. Stadler, Lena S. Stadler and Carrie R. Stadler Murphy, all of the right, title and interest of the complainants in the property belonging to the estate of Ferdinand Stadler, Sr., who was the father of the complainant Emily Freda Ballantine and the said defendants.

Ferdinand Stadler, Sr., died April 21st, 1911. He left a widow and seven children. By his last will, which was executed August 4th, 1908, he gave to his wife, so long as she remained his widow, a life estate in all his property, and after her death provided that his two married daughters, Augusta Maulick and Mathilda Niess, be given $1,000 each, and the remainder of his estate be divided among the remaining children, Ferdinand, Jr.; Lena, Freda, Carrie and Louis.

The said agreement was executed May 23d, 1911, and provided that the complainant Emily Freda Ballantine was to receive, in lieu of her one-fifth interest in the father's residuary estate, the sum of $1,000, to be paid upon the death of the mother, which placed her in the same situation as her two sisters, Augusta and Mathilda.

The complainants now allege that the agreement should be declared invalid, because the complainant Mrs. Ballantine did not sign it of her own free will, but solely as a result of undue influence and duress brought to bear upon her by the threats, complaints, protests and entreaties of her mother and the defendants Ferdinand Stadler and Lena Stadler, and that she signed the document in order to avoid any further scenes and to save and prolong the life of her mother.

It appears that the father had conducted an ice cream and bakery business at Atlantic City for some thirty-five years, and for several years prior to his death the defendant Ferdinand had full charge of the business, assisted by the other defendants.

According to the testimony of the complainants the alleged threats were made on two different occasions, the first time at the reading of the father's will at the home of the parents, shortly after his death, and the second time within a week thereafter, when the mother and the defendants Ferdinand and Lena called at the home of the complainants. It is alleged that Ferdinand and Lena then said they would have nothing further to do with the business unless the complainant Mrs. Ballantine accepted $1,000 in lieu of all other

interest in the father's estate, as they did not intend to conduct the business for her benefit. It is also alleged that the sister Lena said that if they discontinued the business the disgrace would kill the mother, and that Ferdinand made the remark that if the complainant did not sign they would give her one of the damnedest fights she ever had, and that the mother stated that if the complainant wanted money so bad she could take the clothes off the mother's back.

The defendants Ferdinand and Lena testified that the only statement made to the complainant Mrs. Ballantine by either of the said defendants or her mother was to the effect that if she was to have a one-fifth interest in the ice cream and bakery business formerly conducted by the father, that it would be only fair that she should come down and assist in the work, which Mrs. Ballantine refused to do.

The result of the last meeting was that Mrs. Ballantine agreed to sign a release and accept $1,000, the same as her other two married sisters.

The agreement in question was executed at the home of the complainants, and was signed and acknowledged by both Mrs. Ballantine and her husband in the presence of Eli Chandler, a master in chancery. There was no proof that any discussion was then had between the parties, and it will be observed that several days must have elapsed between the last meeting and the signing of the paper, and during that time there was no evidence of any pressure being exerted or influence exercised for the purpose of inducing her to execute the agreement or restraining her from talking the matter over with her husband and procuring independent advice, if she saw fit; and if the statements and remarks of Ferdinand and Lena, the defendants, and the mother, at the last conference in complainant's house, operated at that time as a coercive influence, it is clear, in view of all the circumstances, that a sufficient time intervened between that meeting and when the agreement was executed to relieve the complainants entirely from its power.

We do not think that the conduct of the defendants was sufficient in law to destroy the free agency of the complain-

ant. The agreement was executed and acknowledged before a master in chancery of New Jersey, and there can be no doubt but what Mrs. Ballantine clearly and fully understood what she was doing, and that the agreement was the free and well-understood act of her mind. Considered as a whole, the evidence in the case not only fails to prove duress, but shows that the deed was the act of a mind unimpaired by any threats or undue influence.

Duress is defined to be that degree of constraint or danger either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind of a person of ordinary firmness. *13 Corp. Jur. 396 § 310.* This definition was approvingly cited by the court of errors and appeals in *Byron* v. *Byron, Heffernan & Co., 119 Atl. Rep. 12,* and by the chancellor in *Capossa* v. *Colonna, 95 N. J. Eq. 38.*

And the agreement must have been entered into because of the fear of the threatened injury, otherwise there is no duress, which will ordinarily invalidate a contract entered into after opportunity for deliberate action. *13 Corp. Jur., supra.*

There is a further ground why the complainant's bill should be dismissed. The complainants have allowed the agreement which they executed to stand unchallenged for a period of more than twelve years and made no attempt to set it aside until after the death of the mother, which occurred on October 20th, 1923, and whose testimony would have been of great value in this case. They permitted the defendants to conduct the business during this long period without any objection or interference, and there is no proof in the case to show that Mrs. Ballantine was under the coercive influence of the mother and the defendants from the time the agreement was executed until the mother died.

When one seeks to avoid a contract on the ground of duress, the person seeking such avoidance should proceed within a reasonable time after the removal of the duress, and if a person remains silent for an unreasonable length of time,

he may be held to have elected to waive the duress and ratify the contract. *9 R. C. L. 725.*

It is well established in this state that suitors who seek to repudiate their deeds of release are bound to use reasonable diligence, after the delivery of the instruments of settlement, both to ascertain their rights and to enforce them in courts of equity. *Lutjen* v. *Lutjen, 64 N. J. Eq. 773.*

Equity requires this diligence in an analogy to the statutes of limitation at law for the security of titles to property; to guard against the danger of the loss of evidence by the death, failure of memory or absence of witnesses and proof, and for other important considerations, which rule is laid down in *Lutjen v. Lutjen, supra.*

In *Gifford's Administrator* v. *Thorn, 1 Stock. 702,* where the deed of assignment and release attacked was of a residuary estate worth a sum very largely in excess of the amount actually received and mentioned in the paper, this court held that it was not reasonable diligence for the party, "where there is no disability and no impediment to the vindication of his rights, to lie passive for twelve years and to call on a court of equity for aid, when the lapse of time and his own laches may have deprived his adversary of the means of defense;" and the complainant's bill was dismissed.

The learned vice-chancellor stated, in his conclusions, that taking all the facts as proven before him, he could not feel that the complainant had produced sufficient evidence for him to say that the solemn paper signed by Mrs. Ballantine should be set aside and declared void, in which we concur.

The decree below is therefore affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ.    15.

*For reversal*—None.