THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,
complainant,

*v.*

FIDELITY UNION TRUST COMPANY, defendant-respondent,
and WILLIAM A. CONWAY, JR., as executor of the last
will and testament of William A. Conway, deceased,
defendant-appellant.

[Argued May 28th, 1940. Decided October 10th, 1940.]

*Mr. Abner W. Feinberg,* for the appellant.

*Messrs. Smith & Slingerland,* for the respondent.

The opinion of the court was delivered by

HETFIELD, J.

The Prudential Insurance Company of America, the complainant herein, filed its bill of interpleader against the Fidelity Union Trust Company, the respondent, and William A. Conway, Jr., as executor of the estate of William A. Conway, deceased, the appellant, to determine the ownership of a fund of $20,230.20 deposited in court by the complainant, which represented the proceeds of an insurance policy issued

by it on the life of William A. Conway, deceased, which had been assigned to respondent.

The learned Vice-Chancellor concluded that the fund involved should be awarded to the respondent, and a decree was entered accordingly, which the appellant now seeks to reverse.

The facts, as presented by the record, show that the decedent, in April, 1929, was indebted to the respondent in the amount of $47,000, representing loans obtained by him from time to time, and had pledged with the respondent as security 400 shares of stock of the Hudson County National Bank, of which the decedent was first vice-president. In 1934 and on several occasions subsequent, officials of the respondent endeavored to have the decedent assign to it as additional collateral certain life insurance held by him, which he refused to do, giving as his reason that he carried the insurance for the benefit and protection of his wife in the event he should predecease her. The decedent's wife died in December, 1937, and in April, 1938, the respondent placed his notes in the hands of its attorneys, with instructions to institute suit unless satisfactory arrangements were made for the liquidation of same. The decedent retained counsel after receiving a letter from the respondent's attorneys, and after some correspondence was had between counsel, the decedent's attorney withdrew from the case. On June 10th, 1938, the decedent sent a communication to the respondent stating, among other things, that his indebtedness to the respondent then amounted to $30,000; that his bank stock held as security represented a present market value of $3,000; and that he would assign to the respondent as additional collateral his life insurance, to the extent of $20,000, and would continue to pay the interest on his indebtedness and to make payments on account of principal. The respondent accepted the terms proposed by the decedent and the necessary documents were accordingly executed and delivered. The decedent died on April 8th, 1939, and his indebtedness to the respondent then amounted to $29,100.

The appellant, in his argument, attacks the validity of the assignment of the insurance policy on the grounds that it was

not made voluntarily by the decedent, and that same was obtained by the respondent as the result of duress, threats and compulsion. To support this contention the appellant relies, to a great extent, on remarks and statements alleged to have been made to the decedent by one of the respondent's officers, now deceased, at a conference held in the summer of 1936, approximately two years before the delivery of the assignment. What occurred on that occasion was stated by a witness who testified, in substance, among other things, that he accompanied Conway to the said meeting; that he informed the respondent's officer that the decedent was subject to heart attacks, and that he was present with Conway to "see if I could not effect some kind of a compromise that would lessen the strain on Conway's health;" that the officer then stated to Conway that unless additional collateral was furnished, by an assignment of the insurance, judgment would be obtained and notices of levy posted, and inferred that the decedent's business associates and certain other parties connected with the banking business might be informed that the decedent was a "welcher" and did not pay his debts. He further testified that the decedent refused to comply, stating that the insurance was held for his wife's protection.

We think the evidence is insufficient to sustain the charge that the assignment was the product of duress, threats and compulsion. It is true that the respondent urgently insisted upon additional security, but its importunity or persistent pressure would not, under the circumstances, warrant a finding that the assignment was not made voluntarily. The amount due the respondent was never disputed; and the collateral notes given by the decedent when the debt was created definitely provided that the maker, on demand, would deposit with the holder thereof such additional security as the holder might from time to time require, and in default thereof the note would, without demand or notice, instantly become due and payable. It is therefore apparent that the respondent endeavored to have the decedent do only that to which he had previously agreed; and it is well settled that the mere threats of a party to exercise a legal right acquired by virtue of a contract is not in and of itself actionable. While there was

evidence to show that requests had been made of the decedent to make the assignment on several occasions from 1934 until the time it was delivered, the record does not indicate that the respondent threatened to take any action to enforce its rights other than at the conference held in the summer of 1936, and in April, 1938, when the decedent received a letter from the respondent's attorneys. The decedent may have been more or less irritated by reason of the constant demands for additional security. However, it is firmly established that mere annoyance and vexation will not constitute duress, and to avoid a contract on such ground it is not sufficient to merely show exertion of pressure by threats, but it must clearly appear that the threats employed actually subjugated the mind and will of the person against whom they were directed, and were thus the sole and efficient cause of the action which he took. *1 Black on Rescission and Cancellation* § *233*. Duress as well as fraud is not to be presumed; it must be proved; and it was incumbent upon the appellant to sustain the charge that the assignment was obtained by duress, which he has not done. The fact that legal proceedings were threatened is not in itself sufficient. *Byron* v. *Byron, Heffernan & Co., 98 N. J. Law 127; McCrory Stores Corp.* v. *S. M. Braunstein, Inc., 99 N. J. Law 166.* The record clearly indicates that throughout the entire matter the decedent acted on his own volition and not under any compulsion. For a period of four years, and for two years after the conference when the alleged threats were made, he resisted all efforts on the part of the respondent to have the insurance assigned. His letter of June 10th, 1938, definitely shows that he did not fear any action which might be taken by the respondent, but that he was prompted to make the proposition by reason of his wife's death and his desire to pay his debts to the best of his ability. He did not assign all of his insurance to the respondent, but only a part of it, which only secured a portion of his debt. His proposition was subject to certain conditions relating to the release of his bank stock held by the respondent as security and the waiver by the respondent of interest payments on his indebtedness. All of these facts tend to show that the will of the decedent was not overcome by any act of the respondent.

We have examined the other points argued by appellant relating to the exclusion of testimony, and being without merit, they require no further discussion.

We conclude that the assignment of insurance was voluntary and free from any taint of duress or compulsion; and the decree under review will therefore be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.