The bill of complaint in this case was filed for the purpose of setting aside a bill of sale made by Mary Kleiner to the *Page 28 
defendant, Blanche Kleiner, and to declare Mary Kleiner, as administratrix of the estate of her husband, the holder of the legal title of the interest of her deceased husband in a silk plant, and for other relief.
Nathan Kleiner died intestate on November 14th, 1942, survived by his widow, Mary Kleiner, and two infant children. His estate consisted of an automobile and a majority stock interest in the Fair Maid Silk Corporation which corporation operated a silk plant in Clifton, New Jersey.
After the death of Nathan Kleiner, his widow continued to operate the plant and relied upon the assistance of her brother-in-law, Joseph Kleiner. Joseph Kleiner owned the balance of the stock of the corporation and was familiar with the operation of the business. Mary Kleiner was an officer of the corporation but not active in its operation during the lifetime of her husband.
The business relations between Mary and Joseph Kleiner were not amicable and Joseph insisted that he have a half interest in the plant. He afterward insisted that the whole plant be sold to him or he would resign his position with the company.
Mary Kleiner consulted with her counsel and experts in the silk business relative to a sale. As a result she agreed to sell the plant to the nominee of Joseph Kleiner, who was his wife, Blanche Kleiner, the defendant. The terms of the sale were prepared by Isadore Rabinowitz, a member of the New Jersey bar, who represented all the parties to the transaction. A statement of terms was signed by Mary Kleiner, Blanche Kleiner and Isadore Rabinowitz. The purchase price was to be $15,941.11. Against this price various items were deducted and assumed by the purchaser. One item mentioned therein was a compromise of $4,000 of a $5,000 note made by Nathan Kleiner to Max Goldberg, against which note the statute of limitations had run. This item was included at the request of Mary Kleiner. As a result of the terms of sale, Mary Kleiner was to receive $5,837.01, of which $3,100 was to be paid in cash and the balance of $2,737.01 was to be secured by a chattel mortgage, by the *Page 29 
terms of which mortgage weekly installments of $40 were to be paid to her by the purchaser.
The terms of sale contained also the following statement: "There is an outstanding debt to the State of New Jersey for Unemployment Tax which shall be paid and satisfied by the seller of said plant." Mary Kleiner, through her attorney, attempted to negotiate on amicable settlement of this tax which consisted of two judgments, one for $328.27 and the other for $426.27. Her attorney testified that the Unemployment Compensation Commission advised him that no settlement could be made because the State of New Jersey could not settle for less than the face amounts of the judgments. He said it was suggested to him that if the Commission issued execution on the judgments and the property was sold by reason thereof, the lien of the state would effectively be canceled even though the execution sale brought a lesser amount than the total amount of the judgments and that title to the corporate property would thus pass to the purchaser at the execution sale free from the lien of said judgments. In pursuance of this plan, the sheriff of Passaic County, on May 12th, 1943, struck off the corporate property to Mary Kleiner as an individual and she received the sheriff's bill of sale on May 18th, 1943.
At the sale, Mary Kleiner bid $225. The evidence discloses that on the same day she was reimbursed to the extent of at least $200 from the funds of Sulaine Textile Mills, another corporation in which the parties were interested.
On May 27th, 1943, Mary Kleiner was appointed administratrix of her husband's estate by the surrogate of Passaic County.
On June 1st, 1943, Mary Kleiner, individually, executed a bill of sale to Blanche Kleiner in accordance with the terms of sale dated February 25th, 1943, and received therefor $3,100. Blanche Kleiner gave to Mary Kleiner a chattel mortgage which secured the unpaid balance of the purchase price.
On June 14th, 1943, Mary Kleiner, as administratrix of the estate of her husband, filed the bill of complaint in this *Page 30 
cause praying that the defendant be excluded from any interest in the silk plant and that the complainant be decreed to be the holder of the legal title of the plant as trustee; that the defendant be directed to transfer any title she might have to the complainant upon the repayment of the consideration she had received. The bill of complaint does not allege fraud. The cause of action is based on the theory that Mary Kleiner had no right to purchase the silk plant in her individual capacity at the sheriff's sale, and that she held the same as a trustee of her husband's estate and that the title still stands in her name as such trustee and can only be sold by her as the administratrix. The defendant contends that when Mary Kleiner purchased the said silk plant at the sheriff's sale she was acting as a trustee for the corporation of which she was an officer since she was reimbursed from the corporate accounts.
The conditions in the terms of the sale made by the complainant in her individual capacity are binding upon her in her representative capacity as administratrix of her husband's estate under the doctrine known as "relation back." The doctrine may be stated as: "The grant of letters of administration relates back to the date of the death of the intestate, and legalizes all intermediate acts of the administrator that could have been effectuated by him had he been appointed when such acts were performed, and such administrator can not by suit, in the absence of fraud, avoid acts done by him, or recover property transferred by him after such death, and before his appointment." This doctrine was designed to prevent injustice and is a legal fiction invented to link the time that must of necessity elapse between the death of the owner of the property and the appointment of a person to care for and distribute it according to law. See26 A.L.R. 1539. Though frequently relied upon in other jurisdictions, I have found only one instance where this doctrine has been noted in the reported decisions in this state. SeeBrown v. Howell, 66 N.J. Law 25, 28. It is, however, the settled law.
In view of the foregoing, when Mary Kleiner was appointed administratrix of her husband's estate, she was bound by the *Page 31 
terms and conditions of the sale which she signed on February 25th, 1943.
The sale was consummated on June 1st, 1943, after her appointment as administratrix. On that date the bill of sale and chattel mortgages were executed in conformity with the terms of sale dated February 25th, 1943. The defendant's checks, amounting to $3,100, were also delivered to the complainant on that date. The bill of sale and the two chattel mortgages (one of which was to the complainant and the other to Goldberg) were held in escrow by complainant's counsel. Their actual delivery was suspended only by reason of the restraint of this court.
I believe the foregoing purchase price was fair and reasonable. The complainant had the plant appraised by Theodore Bislek, an expert, who placed a value of $10,000 thereon. Complainant also consulted one Ross, a textile technician. Ross appraised the plant at "somewhere between $8,000 and $8,500." Less than a year before the death of Nathan Kleiner, the Reconstruction Finance Corporation assigned a chattel mortgage, on which there was due $10,000, to Kemper Fabrics Co. for $6,000 and thereby sustained a loss of $4,000. The Reconstruction Finance Corporation would not have taken such a loss if the value of the plant was $40,000 as complainant claims. The defendant, as purchaser, bound herself to Goldberg by reason of the note and chattel mortgage to repay an indebtedness owed by complainant's intestate to Goldberg.
Complainant claims that she was forced to sign the terms of the sale through duress. In order to employ such a defense, it must clearly appear "that the threats employed actually subjugated the mind and will of the person against whom they were directed, and were thus the sole and efficient cause of the action which he took." See Prudential Insurance Co. v. Fidelity Union TrustCo., 128 N.J. Eq. 327, 330. Such subjugation does not appear in this case. Every step which the complainant made was under the careful and constant scrutiny of her counsel. She sought and obtained the advice of others conversant with the business in which she *Page 32 
was engaged. She was given ample opportunity to ascertain the value of the plant which she sold to the defendant.
Without necessarily approving the manner in which the liens of the Unemployment Compensation Commission's judgments were terminated, I am satisfied that when the complainant purchased the property of the Fair Maid Silk Corporation at the sheriff's sale, she became the owner, not in her own right, but as trustee for herself and her children. This is so notwithstanding the fact that at the time she purchased the same she had not been appointed the administratrix of her husband's estate. When, however, on May 27th, 1943, she qualified as administratrix and on June 1st, 1943, sold to the defendant she was acting as administratrix under the doctrine of "relation back" even though she signed the bill of sale in her individual capacity.
It may be argued that to so hold would deprive the infant children of their just share in their father's estate. I think this is not the case. The complainant received a fair consideration for the assets and in equity she is deemed to be holding the consideration in her representative capacity. Under the parens patriae jurisdiction of this court, the Chancellor will protect the interest of the infants when the situation comes to his attention. Complainant will be adjudged to be holding the proceeds of the sale as administratrix and will be ordered to transfer the cash and various mortgages to herself as administratrix and the surrogate of Passaic County notified of that fact.
While this case was pending, complainant, pursuant to rule 88 of this court, called upon the defendant in writing, to admit the stock ownership and identity of the officers of the Fair Maid Silk Corporation as shown on an application of a loan made to the Reconstruction Finance Corporation August 31st, 1939. The defendant did not make such admissions and the reasonable cost of proving the facts amounted to $89.25 as appears from a petition filed on December 27th, 1944. The amount mentioned will be taxed against the defendant and in favor of the complainant.
I will advise a decree in accordance with these views. *Page 33