The complainant, Hochman, had a store in premises leased for a term which expired December 31st, 1945. His landlord, Zigler's Incorporated, refused to renew the lease but permitted him to remain in possession as a tenant from month to month. In February, Leo Zigler, president of Zigler's Incorporated, told Hochman that they were unwilling to have *Page 140 
him as a tenant, that he would have to get out by April 1st. Hochman pleaded in vain. His store had a going concern value around $10,000, but was worth only about $500 on liquidation, since the stock in trade was small and the fixtures were specially adapted to the premises and difficult to remove. As the business drew only from the immediate neighborhood and no other store nearby was available, complainant could not salvage his business by moving elsewhere. Zigler suggested that Hochman find a purchaser for the business, and said that if the purchaser were satisfactory to Zigler, he would give him a lease. So complainant engaged a business broker who produced two brothers, the Darzentas. Zigler found them to his liking and agreed to give them a lease for five years at $175 a month if they should buy the business. Thereupon, after vigorous bargaining with complainant, they agreed to buy from him at $7,800. This they reported to Zigler.
The next morning, February 28th, Leo Zigler sprang his trap. He demanded of Hochman $3,500 of the purchase money which would be paid by the Darzentas for Hochman's business, and threatened unless he got it, not to execute the lease which he had promised, but instead to serve on Hochman notice to quit the premises at the end of March. Hochman consented, for he knew he could not consummate the sale without the lease. As soon as he had surrendered, Hochman was sent to Zigler's lawyer, David Weinick, to execute whatever papers might be put before him. He signed an option giving Weinick the privilege of buying for $4,300 "all the goods, chattels, fixtures, merchandise, inventory, fountain, cash registers, and all other goods and chattels on the premises." Good will was not included. The afternoon of the same day, February 28th, all the parties gathered in Zigler's office — Zigler and Weinick, the two Darzentas, and their lawyer Samuel R. Kaplan, the broker Schenkel, and Hochman. An agreement of sale was drawn and executed between Weinick as seller and the Darzentas as buyers. The purchase price stated was $7,800, of which $500 was paid on account to Weinick. Weinick agreed that the bill of sale would contain a covenant by Hochman and his wife not to compete. *Page 141 
On the day set for closing, March 7th, the same parties met. Hochman is described by the witnesses as sitting dazed, taking no part in what was being said or done. Before the business was finished, he was sent out of the room. There were executed and delivered a lease from Zigler's Incorporated, to Nicholas and Jack Darzentas, for a term of five years beginning April 1st, 1946, a bill of sale from Hochman and wife to the Darzentas; general releases between Zigler's Incorporated, and Leo Zigler on the one part, and Mr. and Mrs. Hochman on the other. The Darzentas paid the balance of the purchase money, $7,300 less certain adjustments to Weinick, and Weinick gave his check for $4,300, less the adjustments, to complainant who promptly collected the check. Weinick also paid the broker's fee, $390. The balance of the purchase money, $3,110, he turned over to Leo Zigler. From a consideration of the transaction as a whole, I have concluded that Zigler must be charged as trustee and compelled to disgorge. But before considering the broader aspect of the case, let us take it up piecemeal.
The option which Hochman gave Weinick was never exercised and has expired. It was an option to buy only the chattels for $4,300; the bill of sale made by Hochman on March 7th was not executed pursuant to the option, for it included the good will and contained a covenant against competition, all in consideration of $7,800. An option and the acceptance thereof must correspond. Martindell v. Fiduciary Counsel, Inc.,131 N.J. Eq. 523; 133 N.J. Eq. 408. The contract between Weinick and the Darzentas, dated February 28th, likewise falls from the case for complainant was not a party to it. The sale on March 7th was made by Hochman as the vendor, and hence the purchase money belonged to him. While the money was paid to Weinick, he had no right to it, and claims none. He, in turn, paid $3,110 of Hochman's money to Zigler who was aware of all the facts and who is therefore liable to the owner, complainant. The release signed by complainant is not a defense since it is not sealed and is not supported by a real consideration. The apparent consideration was $4,300 paid by Zigler's lawyer, but this was merely a part of what was due to complainant, his own *Page 142 
money. Fidelity Union Trust Co. v. Fitzpatrick,134 N.J. Law 250; Durant v. Block, 113 N.J. Law 509. The release given to complainant by Zigler's Incorporated, and Leo Zigler, was not a consideration for Hochman's release, since it does not appear that the parties so intended. Wilentz v. Hendrickson, 133 N.J. Eq. 447; 135 N.J. Eq. 244; Second National Bank v. Curie,116 N.J. Eq. 101. The evidence is that complainant was told he could not have his check unless he and his wife signed and that they signed in order to get the check.
In a sense, these objections are mere legalisms. While Chancery will often ignore such matters in order to do equity, it will, in other cases for the same end, namely, an equitable decree, seize on small technicalities.
The case as a whole can be put in a very few words. Zigler, Hochman, and the Darzentas reached two interdependent agreements — Zigler to lease, Hochman to sell, the Darzentas to take the lease and to buy. Zigler by threatening not to fulfill his part, compelled Hochman to give him $3,110. If a person, without fraud or coercion, pays a demand which is not enforceable against him, the payment is voluntary and cannot be recovered back. Schaedel
v. Liberty Trust Co., 99 N.J. Law 380. And the converse is also true. Coercion or duress, which will render a payment involuntary, must be such a constraint, actual or threatened, as overcomes the mind of the one who makes the payment. Some of the authorities say that it must also be such a constraint as would overcome the mind of a person of ordinary firmness. Capozza v.Colonna, 95 N.J. Eq. 35; 96 N.J. Eq. 385; Ballantine v.Stadler, 99 N.J. Eq. 179 and 404. The threat in the present case satisfies either statement of the rule. The situation must also be such that the person making the payment has no other adequate means for protecting his property. Miller v. Eisele,111 N.J. Law 268; Meier v. Nightingale, 134 N.J. Law 275. If Zigler had refused to make the lease, the Darzentas would undoubtedly have declined to consummate the purchase of the store, and had Hochman sued them for breach of their contract to buy, they could have defended on *Page 143 
the ground that the agreement was conditional upon their securing a lease. Hochman had no adequate relief.
It is also the law that to constitute duress, the threatened action must be unlawful or wrongful. "But acts may be wrongful within the meaning of this rule, though they are not criminal or tortious or in violation of a contractual duty." Restatement —Contracts, § 492(g). This language was quoted with approval inMiller v. Eisele and is in accord with our New Jersey law. Judgment whether the threatened action is wrongful or not is colored by the object of the threat. If the threat is made to induce the opposite party to do only what is reasonable, the court is apt to consider the threatened action not wrongful unless it is actionable in itself. But if the threat is made for an outrageous purpose, a more critical standard is applied to the threatened action. So we need not inquire whether the promise which Zigler made to complainant that Zigler's Incorporated would lease to the purchaser, provided the purchaser was satisfactory to Zigler, was based on a good consideration, was certain and was enforceable. The situation which arose the moment Zigler and the Darzentas had agreed upon a lease, and Hochman and the Darzentas had made their bargain, was such that Zigler and his corporation were under a moral obligation to execute the lease. The threat not to do so employed to extort a large sum from Hochman, constituted duress.
Duress is a species of fraud. The recipient of money paid under duress is a constructive trustee. Restatement, Restitution, § 166. Ordinarily, the money can be recovered by an action ofassumpsit but equity also has jurisdiction.
My findings of fact in the present case are based principally on the evidence presented by the defendants. The complainant did not accurately state what occurred. This was not due, I believe, to an attempt to deceive the court, but rather to a confused memory of a most trying experience and his not having copies of any of the papers which had been executed.
There should be a decree for complainant for $3,110, with interest from March 7th, 1946, and costs, including an adequate counsel fee. *Page 144