The consideration of this cause may well be undertaken with a comprehension of that degree of duress which in equity will permit a party to a tripartite transaction to recant, retrace his steps, and affirmatively to rescind his own course of action without which the entire bargain would not have been consummated.
A variety of definitions of duress, similar in essence, may be found in the opinion composed by Mr. Justice Perskie for the Court of Errors and Appeals in Miller v. Eisele,111 N.J. Law 268, 275; 168 Atl. Rep. 426.
Other informative decisions of recent date relative to the subject are: In equity, Capossa v. Colonna, 95 N.J. Eq. 35;122 Atl. Rep. 378; affirmed, 96 N.J. Eq. 385;124 Atl. Rep. 760; Ballantine v. Stadler, 99 N.J. Eq. 404; 132 Atl. Rep. 664;Prudential Insurance Co. v. Fidelity Union Trust Co., 128 N.J. Eq. 327; 15 Atl. Rep. 2d 888; Magna Manufacturing Co. v.Aetna Casualty, c., Co., 129 N.J. Eq. 142; 18 Atl. Rep. 2d565; Kleiner v. Kleiner, 139 N.J. Eq. 26; 49 Atl. Rep. 2d582; Hochman v. Zigler's, Inc., 139 N.J. Eq. 139;50 Atl. Rep. 2d 97. At law, M.L. Shoemaker Co., v. Board ofHealth, c., 83 N.J. Law 425; 85 Atl. Rep. 312; D'Aloia v.Summit, 89 N.J. Law 154, 155; 97 Atl. Rep. 722; affirmed,89 N.J. Law 711; 99 Atl. Rep. 189; Koewing v. West Orange,89 N.J. Law 539, 541; 99 Atl. Rep. 203; Byron v. Byron, Heffernan Co., 98 N.J. Law 127, 131; 119 Atl. Rep. 12; McCrory StoresCorp. v. S.M. Braunstein, Inc., 99 N.J. Law 166, 168;122 Atl. Rep. 814; Schaedel v. Liberty Trust Co., 99 N.J. Law 380, 383;123 Atl. Rep. 714; Miller v. Eisele, supra; Sutton v.Metropolitan Casualty, c., Co., 117 N.J. Law 21, 22, 186Atl. Rep. 465; Standard Radio Corp. v. Triangle Radio Tubes, Inc.,125 N.J. Law 131, 132; 14 Atl. Rep. 2d 763; Smith v.White, 125 N.J. Law 498, 500; 16 Atl. Rep. 2d 628; PomptonStationery Corp. v. Passaic County News Co., Inc.,127 N.J. Law 235, 237; 21 Atl. Rep. 2d *Page 36 849; affirmed, 129 N.J. Law 99; 28 Atl. Rep. 2d 119;Clonavor Realty Co. v. Unscheid, 129 N.J. Law 247, 248;29 Atl. Rep. 2d 179; Meier v. Nightingale 134 N.J. Law 275, 276;46 Atl. Rep. 2d 785.
Assuredly action taken by one voluntarily and as a result of a deliberate choice of available alternatives cannot ordinarily be ascribed to duress. Shoemaker Co. v. Board of Health, supra;D'Aloia v. Summit, supra; McCrory Stores Corp. v. Braunstein,supra.
Duress is not to be presumed and, therefore, it is incumbent upon these complainants to prove that the alleged coercion actually subjudicated their minds and was the efficient cause of the course of action they pursued. Prudential Insurance Co. v.Fidelity Union Trust Co., supra; Kleiner v. Kleiner, supra.
Omitting the incidentals, the pith of the present controversy can be adequately revealed with a greater economy of words. During almost a quarter of a century the complainants conducted a modest restaurant on New Brunswick Avenue in the City of Perth Amboy. It was generally and favorably known as "Walter's." In the recent years the complainants occupied the premises under a tenancy from month to month. In June, 1945, the defendant purchased the property and located his business of selling electrical appliances in the adjacent store in the same building. He offered the complainants a lease for an extended term and requested an increase of rent. The additional rent was agreeable and was thereafter paid by the complainants, but they declined to execute the proposed lease because their attorney found some of the terms objectionable.
A neighborly fellowship evolved among the parties. The defendant habitually strolled into the restaurant where over a fragrant cup of coffee he would discuss with the complainants the topics of the day. The proposed new lease became mutually inconsequential.
They resolved to improve the appearance of their places of business by the erection of a more attractive front extending uniformly across both. This was accomplished by the defendant, and the share of the cost payable by the complainants *Page 37 
to the defendant was $510. I refer to this non-controversial item only because it is explanatory of the reason for the subsequent payment by the complainants of $1,510 instead of the $1,000 to which this litigation primarily relates. Incidentally that transaction was the product of a verbal agreement.
Unfortunately both complainants began to suffer more acutely from bodily infirmities, and both were advised by their physicians to retire from active business. They divulged their desire to sell their restaurant enterprise and, in the spring of 1946, a prospective purchaser came forth whose offer was perhaps materially inflated by the value of the good will. The price was acceptable. "What about the lease?" inquired the favorably disposed buyer. Woe unto the complainants, their tenancy was only from month to month.
Concisely told, it was in such an exigency that negotiations originated to provide the prospective purchaser with a satisfactory lease of the premises. The defendant desired the complainants to continue to conduct the restaurant. He firmly entertained the opinion that the patronage of the business depended upon the personality and popularity of the complainant Walter Ewert and upon the manner in which the complainants managed it. He informed the complainants that if they were resolute in their intention to sell, he would grant to them a lease for a term of years with permission for them to assign it. The defendant was ignorant of the financial responsibility of the purchaser and doubtful of his ability to carry on the business successfully.
The complainants expressed their disinclination to be thus obligated. The purchaser endeavored independently to negotiate a lease from the defendant, and it is said offered a relatively substantial sum of money to the defendant to induce him to dispossess the complainants. The defendant declared he would never resort to such an expedient. It eventually became manifest that only by means of some tripartite compact could the interrelated undertakings be accomplished.
The discussions persisted and ultimately the defendant informed the complainants that if they would contribute to him $1,000 out of what he regarded as an exceedingly generous price for the restaurant, he would grant to the purchaser a *Page 38 
ten-year lease essentially similar to that which he had previously tendered to the complainants. The complainants assented and after a lapse of a week or ten days they attended the round robin where without any articulate objection they delivered to the representative of the defendant their attorney's check for the $1,000 plus the $510 to which I have previously referred. Both transactions (the sale and the lease) were thereby completed on June 3d 1946.
Months glided by without any protest from the complainants, but the original apprehensions of the defendant became realistic. He was obliged to receive some of his rent in the form of promissory notes, and the management of the restaurant is said "to have changed hands three or four times."
Perhaps I have indulged in a bit of caprice in ascertaining that the opinion of my colleague Vice-Chancellor Bigelow inHochman v. Zigler's, Inc., appeared in the New JerseyAdvance Reports on January 18th, 1947, and the bill of kindred resemblance was filed in the present cause on January 30th, 1947.
If we are to adopt the modern doctrine of "business compulson,"eo nomine (17 Am. Jur., "Duress and Undue Influence," § 7;79 A.L.R. 655), it must be cautiously and appropriately applied.
It has long been our conception of competitive business activities that "he who comes first to the top of the hill, may sit where he will," unless he resorts to fraudulent, inequitable, or unconscionable practices. Enmeshed in the entanglements of some unfortunate dilemma, many individuals and corporations have found it imperative to buy their emancipation from an obligation which they voluntarily assumed, or to dispose of some of their assets at a loss. Perhaps they did so under the weight of adversity or misadventure and were thus the victims of some stress, yet I think this court in such cases should act with supreme caution in abrogating and countermanding such dealings. The qualities of the bargain which the litigant once regarded as expedient and pragmatical ought not to be reprocessed by the court into actionable duress. However, this cause, in its factual elements, does not fall within the range of that doctrine. *Page 39 
The significant distinctions between the present case and theHochman Case are easily perceptible. Here the complainants were not confronted with any threat to terminate their existing tenancy. They were offered a ten-year lease with permission to assign it to a purchaser of their business, or alternatively, to guarantee the performance of a lease if made directly to the purchaser. They declined. They were not obligated by any contract to sell their business. They were free to continue to conduct their restaurant if they so desired. They were at all times represented by counsel. The defendant was under no legal or indeed moral obligation to let the premises for a term of years to a stranger. The impeditive difficulties encountered by the complainants were not originated and organized by the defendant. The failing health of the complainants was doubtless the most influential factor in their ambition to retire from business. The prime obstructions were of their own making.
I am averse to accommodating the principle of duress to the circumstances of the present cause. These complainants safely reposing at a junction from which they could pursue alternative courses, deliberately and voluntarily selected the one that they believed would lead them to the most profitable and desirable destination.
A decree will be advised dismissing the bill. *Page 40