The bill in this case was filed to set aside a conveyance of real property made by complainant to her husband, the *Page 384 
defendant. It also seeks to have a savings account in her name established as their joint property.
The complainant alleges that on December 6th, 1946, the defendant and their then attorney fraudulently induced her by duress, coercion, deceit, deprivation of her right to independent advice and other fraudulent devices, to execute a deed to her husband for the premises situate in Chatham, Morris County. She says, in regard to the bank account, that "it was the agreement between the parties hereto that such sum or sums that might accumulate therein be dedicated solely for the purchase of a home, in their joint names."
The answer denies that the real property was ever owned equitably by the complainant. He also denies the joint ownership of the bank account and alleges that the realty and moneys in the bank were turned over to the complainant in trust and were to be returned to him upon demand.
The real property was purchased in August, 1943, for $16,000. Complainant admits that the original payment on same of $4,000 was made by the defendant with his money. A bond and purchase-money mortgage were given to secure the balance of the purchase price of $12,000 and the husband joined in the execution of both. The mortgage provided for monthly installments of $150. At the direction of the husband, the wife was named as the grantee in the deed.
The presumption is that a gift or settlement was intended for the wife by the husband. Such presumption is rebuttable by definite and convincing proof of a contrary intention. Vice-Chancellor Backes, in Yetman v. Hedgeman, 82 N.J. Eq. 221,223, said:
"When lands are purchased by one person, who pays the purchase price, and they are conveyed to another person who is a stranger, a trust in the lands is implied or results in favor of him who has paid the consideration. But where a husband purchases and pays for lands and takes the title in the name of his wife, such a trust does not necessarily result. On the contrary, a presumption arises that the husband has caused the conveyance to be made to his wife by way of a settlement upon her. Such a presumption may be rebutted and overcome by proof of facts accompanying the transaction *Page 385 
which show that the intention of the parties was that the lands should not be held by the wife as settled upon her, but in trust for the husband. Her subsequent acknowledgment and recognition by words or acts may be given in evidence. If from all the evidence it is clear that the presumption of settlement is rebutted a trust will then result which can be enforced. Duvale v.Duvale, 56 N.J. Eq. (11 Dick.) 375."
Defendant, in order to support his contention, called as a witness the lawyer who has been a member of the bar of this State for 19 years and who represented the parties at the time the deed was given. He testified it was distinctly understood between the parties at the time that the complainant would hold the title to the premises as trustee for the defendant until such time as the defendant should request her to convey it to him. He testified that the husband urged this method because (1) he anticipated induction into the armed forces; (2) because only a short time prior the defendant had been divorced from his first wife and feared that she might attempt to increase alimony payments; and (3) for the reason that he intended to use the property as a means of educating his children of his former marriage. The attorney also testified that he suggested the execution of a formal declaration of trust embodying the terms of the agreement. The defendant said this would not be necessary because he had confidence in his wife. He declared that the complainant was fully aware of this agreement and had stated at the time of the closing that the property did not belong to her and that she "can turn it over any time he wants it." The defendant reiterated the foregoing testimony.
Complainant denies all of the foregoing and asserts that the property was given to her in fee. She contends that the idea of a trust is concocted for the purpose of depriving her of her real estate. She admits, however, that subsequent to the taking of title only her husband acted as the owner of the premises, paying for the repairs, amortizing the mortgage, negotiating the rentals and accounting for the rents in his income tax returns until he was inducted into the Marines. She admits that the husband managed the property while in service through his brother until such time as the brother *Page 386 
could no longer handle it. Upon her husband's discharge from military service, he took over the active management of the property.
She attempted to show that her husband regarded her as the owner of the property by three letters which he wrote while in service from an island in the Pacific. These letters are of little value in determining a question of title. See Hood v.Hood, 83 N.J. Eq. 695, 699. As a matter of fact, one of the letters is destructive of the purpose for which it was introduced. This letter, among other things, says: "Therefore I don't want you to sell * * *. Don't do anything without consulting me please."
I am convinced that the defendant's proof is sufficient to rebut the presumption of a gift or settlement on the wife and I am of the opinion that while title passed to the complainant she held it as constructive trustee for the defendant under an obligation to convey the premises to him upon demand. See Moses
v. Moses, 140 N.J. Eq. 575.
If the complainant held the property as a constructive trustee, as above stated, any demands of the husband accompanied by threats would not entitle the complainant to the cause of action she alleges. See Prudential Insurance Co. v. Fidelity UnionTrust Co., 128 N.J. Eq. 327, 329.
An examination of complainant's testimony and her actions subsequent to the transfer demonstrates the unreliability of the evidence on her part. She had marital difficulties with her husband. Less than a month from December 5th, 1946, she transferred a savings account in her name from one bank to another upon the advice of her lawyer. On December 26th, of that year, when her husband and his lawyer requested her to execute a deed she must have been on guard. She telephoned her attorney informing him that her husband and his lawyer wanted her to transfer the property. However, when I questioned her about the transaction she said she did not know what the transfer from her to her husband meant. She stated that she was plied with liquor, deceived and chicaned by her husband and his lawyer for four hours until she became hysterical; that her husband kept putting the pen into her hand and telling her to sign and "so I know I signed *Page 387 
something. And I said I knew I was doing wrong and I did not want to do it." The next question put to her was as follows: "Did you at this time or any other time sign any confession or admission of infidelity or adultery?" To which she answered: "I do not know what I signed. I did not sign — no, I did not sign that." She seemed to be uncertain as to what she had signed in one moment and in the next she is certain that she did not sign a confession of adultery. Her conversation with her husband on the following day after the deed was signed demonstrates that she knew she had conveyed the property to him, as she testified, "I told him that I had given him the confidence he needed the night before and as a result of what I heard, I wanted him to give the confidence to me by putting the building back in my name."
After all her "frenzy" and "hysteria" she went to a "wake" in New York City with her husband and his mother. The husband's lawyer notified her lawyer that the deed had been executed by her. Her attorney testified that he never saw her from that day until "away later." These circumstances do not indicate that she had been in a "frenzy" and "driven out of her mind."
Duress and fraud are not presumed. They must be proved. The complainant, no doubt, was importuned and persistently entreated to execute the deed but such urgings do not justify a finding that the execution was not voluntary. See Prudential InsuranceCo. v. Fidelity Union Trust Co., supra.
Complainant admits that the moneys in the savings account were given to her by defendant to be deposited for the purpose of purchasing a home. She contends that since it was agreed to dedicate this account to the purchase of a home she is entitled to one-half of the fund. Complainant relies on the case ofMarker v. Marker, 103 N.J. Eq. 538, in which the court found evidence of a "fifty-fifty" agreement and divided the fund equally between the husband and wife. In the case pending, complainant's proof is devoid of such an agreement. She simply states that the purpose of the account was to purchase a home. There is no proof that she was to have an estate therein during her lifetime. Complainant also cites *Page 388 
the case of Meyer v. Meyer, 124 N.J. Eq. 481, 484, wherein the court said:
"At common law, a gift by a husband to his wife was ordinarily void, though in equity the gift was upheld if deemed a reasonable provision for her. But a husband's deed of all his property to his wife was inoperative in equity as in law, for it went beyond a reasonable provision. 2 Story Eq. Jur., § 1374, quoted inFretz v. Roth, 70 N.J. Eq. 764. I do not know whether a husband's gift of all his property to his wife, fully proved, and imposition and mistake absent, would nowadays be held void; but the policy which underlies the rule stated in Story has still sufficient vitality to require the wife definitely to prove donative intent. Banking the money in her account is not enough."
In the present case, it was proved that everything the husband owned was put in the wife's name. There is, however, a complete absence of proof that the husband had a donative intent as to the moneys in the bank account. Her contention that the money was to be used for the purchase of a home rebuts the presumption of a gift. She may have anticipated an interest in the prospective home more substantial than her dower but until the home was purchased such anticipation could not be realized.
After the bank account was created there was only one withdrawal of $600 which she withdrew at the direction of her husband and which he used for his own purposes. If the husband died before the purpose of the account was realized, she would be compelled to relinquish it to his estate.
In the absence of proof sustaining complainant's contention that the defendant intended to make a gift to her, I have concluded that she is a mere trustee of the fund and she will be directed to turn the account over to the defendant. I will advise a decree accordingly. *Page 389